HOME OWNERS FUNDING CORP. OF
AMERICA, Plaintiff,

v.

CENTURY BANK, Defendant.

Civ. A. No. 88–0003–Y.

United States District Court,
D. Massachusetts.

Sept. 30, 1988.

Jeffrey B. Rudman, Hale & Dorr, Boston, Mass., for plaintiff.

Henry Dinger, Thomas Curley, Goodwin, Procter & Hoar, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The defendant, Century Bank ("Century"), has moved for dismissal of this contract/tort action arguing that the Court lacks personal jurisdiction in this matter. In the alternative, Century moves that the Court transfer the case to the District of Arizona pursuant to 28 U.S.C. sec. 1404. At a hearing on February 24, 1988, the Court ordered that the plaintiff, Home Owners Funding Corp. of America ("Home Owners"), amend its complaint to allege with specificity what misrepresentations it asserts that Century made to it. This Court now rules that it has personal jurisdiction over Century and DENIES without prejudice the motion to transfer the case.

## I. BACKGROUND

■ When a question as to personal jurisdiction is raised, the burden falls on the plaintiff, through affidavits and other competent evidence, to make out a prima facie case for the existence of personal jurisdiction. E.g., *Val Leasing, Inc. v. Hutson*, 674 F.Supp. 53, 55 (D.Mass.1987) (and cases gathered); *North American Video Corp. v. Leon*, 480 F.Supp. 213, 215–16 (D.Mass. 1979). The facts, relevant to Home Owners' prima facie case for personal jurisdiction and established by affidavits in the record, are as follows.

Home Owners, based in Burlington, Massachusetts, services a special type of mortgage which meets guidelines set forth by the Government National Mortgage Association ("GNMA"). *See* Affidavit of Martin H. Heck ("Heck Aff.") at 2. Century is a commercial bank based in Phoenix, Arizona that is authorized by GNMA to service this same special type of mortgage, and in fact in 1987 was servicing 3600 such mortgages on mobile homes. *See* Affidavit of Noel C. Rudd ("Rudd Aff.") at 2; Heck Aff. at 3.

Such loans are riskier than single family home loans due to a higher default rate. *See* Heck Aff. at 3. In 1987, Century apparently decided to sell their portfolio of mobile home loans and set out to find another GNMA-approved bank willing to assume them. *See* Rudd Aff. at 2; Heck Aff. at 3.

In early July, 1987, a Century agent contacted Martin H. Heck, Home Owners' chairman and chief executive officer, at his Burlington office to discuss selling Century's portfolio to Home Owners. *See* Heck Aff. at 3. The agent called again a few days later and arranged for Century's executive vice-president, Noel C. Rudd, to meet with representatives of Home Owners in Burlington on July 9, 1987. *Id.* at 4. At that meeting, Rudd discussed in general terms the proposed deal, but no agreement was reached. *Id.* Over the following weeks, Century sent many letters and overnight courier packages to Home Owners' Burlington office and made dozens of telephone calls to Home Owners' employees in Burlington in an effort to negotiate Home Owners' purchase of the loan portfolio. *Id.*

On September 21–22, 1987, Rudd again traveled to Burlington for an intensive two-day series of meetings with Home Owners officials, including Heck. *Id.* at 4–5. At that time, the parties agreed to all the substantive terms of the contract that was eventually executed. *See id.* at 5. On October 1, 1987, Rudd executed the agreement in Washington, D.C. Rudd Aff. at 4. On the same date, Heck executed the agreement in Burlington. Heck Aff. at 5.

On November 6, 1987, Home Owners filed this suit seeking damages pertaining to this contract. Home Owners' complaint lists four counts: breach of contract, breach of warranty, negligent misrepresentation, and violation of Mass.Gen.Laws ch. 93A. Specifically, Home Owners contends that, at the September 21–22 meetings, Century, through Mr. Rudd, made the following negligent misrepresentations: 1) that Century maintained the loan portfolio in compliance with GNMA regulations; 2) that the loans had been re-certified less than four months before the sale; and 3)

that Century complied with the GNMA regulations regarding the maintenance of internal reserve funds relating to the loans to be transferred. *See* Amended Verified Complaint and Jury Demand at paras. 7–14.

## II. DISCUSSION OF LAW

### A. *Personal Jurisdiction.*

■ The law is settled that, in a multi-count complaint, if a court has personal jurisdiction over the defendant with respect to one count, it has personal jurisdiction over the defendant with respect to all counts. *See Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661, 663 (1st Cir.1972) (observing that the defendants' argument that the contract in issue was made in New York and that the defendants had not committed any act in Massachusetts which would render them amenable to the personal jurisdiction of its courts in a suit was "wide of the mark because the complaint is framed as an action for fraud and deceit as well as in contract"); *Val Leasing, Inc. v. Hutson,* 674 F.Supp. 53, 56 (D.Mass.1987); *cf. Amtrol, Inc. v. Vent–Rite Valve Corp.,* 646 F.Supp. 1168 (D.Mass.1986) (holding that a court may exercise pendant personal jurisdiction over a foreign defendant with respect to state law claims that arise out of a nucleus of operative facts common to a federal antitrust claim). Thus, should the Court find that it has personal jurisdiction over Century with respect to any one of the four counts, the motion must be denied.

Determining personal jurisdiction is a two-step process. First, jurisdiction must be found to exist under the Massachusetts long-arm statute, Mass.Gen.Laws ch. 223A, sec. 3. Second, "[t]he hurdle of constitutional due process requirements must also be cleared." *Ealing Corp. v. Harrods Ltd.,* 790 F.2d 978, 983 (1st Cir.1986).

■ This Court finds that it has personal jurisdiction over Century with respect to the negligent misrepresentation and the 93A counts. The Massachusetts long-arm statute permits a court to "exercise personal jurisdiction over a person ... [who] (a) transact[s] any business in this commonwealth ... [or who] (c) caus[es] tortious injury by an act ... in this common-

wealth." Mass.Gen.Laws Ann. ch. 223A, sec. 3 (West 1985). Home Owners has clearly made out, through its affidavits, a prima facie case that satisfies the long-arm statute, asserting that Century transacted business in the Commonwealth—the negotiation of the agreement between the parties in Burlington—and caused tortious injury by means of its negligent misrepresentations made while so negotiating in Massachusetts. *See* Affidavit of Stephen Leon ("Leon Aff.") at 2–3; Heck Aff. at 4–5. *See, e.g., Ealing Corp.,* 790 F.2d at 983 (holding that the sending of a telex from the United Kingdom to the Massachusetts plaintiff by the defendant was enough to satisfy the "transacting any business" requirement).

The second hurdle of due process is, in the abstract, a more difficult one. Home Owners, however, has successfully cleared it. The factual underpinnings of the two counts are Home Owners' assertions that representatives of Century contacted Home Owners in Burlington, traveled there for preliminary talks, made numerous telephone and mail contacts with Home Owners' employees, re-entered the Commonwealth for contract negotiations, and therein negligently made misrepresentations that induced Home Owners to enter into an agreement. *See* Heck Aff. at 3–5; Leon Aff. at 2–3. Such a showing is more than sufficient to establish the minimum contacts necessary to satisfy procedural due process. Century "purposefully avail[ed] itself of the privilege of conducting activities within [Massachusetts], thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), and thus "should reasonably anticipate being haled into court [here]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The case of *Ealing Corp.,* relied on by Century for the proposition that no personal jurisdiction can lie in a case such as this one absent an allegation of fraud, is inapposite. True, the First Circuit in *Ealing Corp.* did state:

Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state. The element of intent also persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby "purposefully avail[ed] itself of the privilege of conducting activities within the forum State...."

*Id.* at 983 (quoting *Murphy,* 460 F.2d at 664 [footnotes and citation omitted]). However, *Ealing Corp.* is clearly distinguishable. There, the court was considering whether personal jurisdiction existed over a defendant which had allegedly sent fraudulent misrepresentations into the Commonwealth from outside, not one which, through its representatives, had entered the state for substantial meetings and negotiations, and which through those representatives had therein made the negligent misrepresentations alleged.[1] While *Ealing Corp.* does seem to establish an intent requirement in the former case, it is silent as to whether any such standard exists in the latter case.

This Court holds that such a standard would be unduly high. Although intent is necessary in the attenuated case of an actor outside the Commonwealth whose actions result in injury in the Commonwealth to insure that, consistent with due process, the actor "should reasonably anticipate being haled into court [here]," *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567, intent to misrepresent is not necessary where, as here, an actor voluntarily and knowingly enters the Commonwealth and engages in several days of discussions and negotiations with a local actor culminating in a deal.

■■■ Indeed, the District of Columbia Circuit suggests this distinction in *Margoles v. Johns,* 483 F.2d 1212 (D.C.Cir. 1973), where, interpreting *Murphy,* it noted that the *Murphy* court did not believe a negligent act committed outside the Commonwealth was enough; "[e]vidently an intentional act, however, is a type of continuing wrong which carries its perpetrator mysteriously along and thrusts him, constructively of course, into the domain of the injurious consequences." *Id.* at 1220. Here, of course, there is no need to create a legal fiction of presence in the Commonwealth and condition it on a showing of intent. Century, through its representatives, committed the allegedly tortious acts in Massachusetts.[2]

1. Indeed, *Murphy* made clear that, had the defendant made the fraudulent remarks within the Commonwealth, jurisdiction would exist. *See, e.g., Murphy,* 460 F.2d at 663 (noting that "if plaintiff alleges that defendant's agents made misrepresentations to him personally within Massachusetts, defendant would without question be within the jurisdiction of the court.").

2. This Court also holds that the provision in the agreement between the parties that "[t]his Agreement shall be governed by, and the rights of Seller and Purchaser shall be determined in accordance with, applicable laws and regulations of the United States of America and the State of Arizona," Purchase Agreement, Section 8.14, at 28, does not preclude the application of Mass.Gen.Laws ch. 93A to this matter as Century argues. The Court holds, as matter of law, that this provision refers to the contract rights of the parties and in no way limits the application of Massachusetts tort and statutory law to them. Indeed, query whether, given Massachusetts' strong policy interest in the unfair trade practice aspect of 93A, an attempt by parties to contract themselves out from within its shadow would not be void as against public policy.

Because the Court finds that it has personal jurisdiction over the defendant Century in this case with respect to the counts of negligent misrepresentation and 93A, and that therefore it has personal jurisdiction over Century with respect to the other three counts, *see supra* at 1344–1345, it need not and does not decide at this time whether it otherwise has jurisdiction over Century with respect to the two contract counts in the complaint under a contract-plus analysis. *See Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 933–34 (1st Cir.1985).

In addition, the Court does not rule on the issue whether, as a practical matter, Home Owners can maintain its action to the extent it is grounded in negligent misrepresentation given the Purchase Agreement's integration clause. *See* Purchase Agreement, Section 6.4, at 23. Massachusetts law is clear that an integration clause will not protect a party against the consequences of his own fraud. *Bates v. Southgate,* 308 Mass. 170, 182–83 (1941). What the effect of an integration clause is on a charge of negli-

**B.** *Transfer.*

■ In the alternative, Century seeks transfer pursuant to 28 U.S.C. sec. 1404(a). This decision is discretionary for the Court; the burden is on the defendant to show that a transfer is warranted. *Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. 165, 169 (D.Mass.1982).

■ Several facts are to be considered. First, the plaintiff's choice of forum is entitled to great weight. *Id.; S–G Securities, Inc. v. Fuqua Investment Co.*, 466 F.Supp. 1114, 1122 (D.Mass.1978); obviously this factor bolsters Home Owners' position. Other factors include the convenience of the parties and the witnesses, and the interest of justice. As for the convenience of the parties, this factor does little to aid Century in meeting its burden. Century notes that Home Owners' parent corporation maintains two offices in Phoenix of which it presumes Home Owners' representatives could make use during any trial. One imagines, however, that representatives of Century, a company with assets of $170,000,000, will not be preparing for trial on a bench on Boston Common.

With respect to the interest of justice, Century argues that, because Arizona law governs the contract, a United States District Court in Arizona is better suited to hear this matter. The argument neglects to note that Massachusetts law with respect to the Chapter 93A and the negligent misrepresentation counts will be applicable, as will federal GNMA regulations. Thus, a Massachusetts federal court would seem to be equally adept at trying the case. Century implies that Home Owners is trying financially to strong arm it into settling by litigating in a distant part of the country;

again, one imagines that representatives of a $170,000,000 corporation will be able to absorb the additional costs of this litigation attendant upon its being tried in this venue. Finally, Century argues that Arizona, with 40% fewer civil cases per judge and a six-month median disposition time—as compared to thirteen months in the District of Massachusetts—is a better choice of forum. The Court grants that the speed of resolution from one venue to the next is a legitimate consideration. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, sec. 3854 (1986) at 457 (noting that it is "relevant ... that trial may be speedier in another court because of its less crowded docket"). The degree to which this factor buttresses Century's argument, however, is diminished considerably, although not entirely, by the array of alternative dispute resolution choices employed by this Court—summary jury trial, trial before a magistrate, trial before a retired Massachusetts Superior Court Justice, and the court mediation project[3]—which will ensure that litigants who truly seek an expeditious resolution of their dispute shall have one.[4]

The final factor, the convenience of the witnesses, has been termed by one set of commentators as, "[p]robably the most important [one]." 15 C. Wright, A. Miller & E. Cooper, *supra*, sec. 3851 at 415. Century here argues that several key employees or former employees will be called at trial, all of whom now reside in Arizona. Century further notes that some of these individuals will no longer be employed by them at the time of trial and that, therefore, because they are not amenable to process in

---

gent misrepresentation—whether negligent misrepresentation, like fraud, vitiates the entire contract and thus permits the introduction of evidence of the misrepresentation despite the parol evidence rule, *see Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 406–07 (3rd Cir.1981)—is by no means clear. The present motion before the Court deals only with jurisdiction, and the Court has tailored the scope of its ruling accordingly.

**3.** The Court has the power to order a summary jury trial pursuant to Fed.R.Civ.P. 16. *McKay v. Ashland Oil Co.*, 120 F.R.D. 43 (E.D.Ky.1988);

*Arabian American Oil Co. v. Scarfone*, 119 F.R. D. 448 (M.D.Fla.1988). *But see Strandell v. Jackson City*, 838 F.2d 884, 888 (7th Cir.1988). Litigants must agree to any of the other three alternatives.

**4.** The Court further notes that the defendant, not the plaintiff, is usually the party that prefers more elephantine litigation. Thus, one presumes that this defendant, eager for its day in court, is likely to get its wish expeditiously, albeit through one of the alternative dispute resolution vehicles listed above.

Massachusetts, may not be present to testify at trial. Proceedings here, so the argument runs, would be reduced to "trial by deposition."

Century produces a lengthy list of witnesses it says it will call at trial. However, Century here appears guilty of padding the numbers. Many of the witnesses listed simply duplicate the testimony of others. *See, e.g.,* Rudd Aff. at 10–13. Moreover, in exercising its discretion, the Court must focus on the importance of each witness, not on the number of witnesses in the two states. *See, e.g., Kahhan v. City of Fort Lauderdale,* 566 F.Supp. 736, 740 (E.D.Pa. 1983); C. Wright, A. Miller & E. Cooper, *supra,* sec. 3851 at 425–427 (and cases gathered). While it is extremely difficult for the Court to determine with certainty at this point in the litigation who the key witnesses will be, they do not appear clearly to be centered in Arizona. This case, it seems, will focus in part on the negotiations that resulted in the underlying deal. The parties differ somewhat about whom the principals to these talks were, but essentially the following individuals appear to have been involved: for Century, Century employees Noel Rudd, Judy Thrasher, and Doug Stiteler and Century counsel Gilbert Rudolph; for Home Owners, Home Owners employees Martin Heck, and Stephen Leon and Home Owners counsel James Brodsky.[5]

While these line-ups appear to be a wash, Century further asserts that the testimony of a large number of Century employees and former employees will be necessary to show whether Century breached the contract by failing to comply with GNMA regulations. As noted above, the list appears to be greatly inflated. In addition, this Court suspects that documentary evidence

rather than live witnesses may be the most crucial part of that aspect of the case which focuses on Century's compliance with the regulations.[6] Moreover, it is by no means clear to the Court at present that these individuals will not testify at a trial. Those who are still employees presumably would be present. Those who no longer work for Century—for example, Judy Thrasher who was terminated in January, 1988—may well no longer reside in Arizona at the present or in any event by the time any trial on these matters takes place and thus may not be amenable to service even if a transfer is granted.[7]

Because it remains unclear to the Court who the key witnesses will be with respect to the breach of contract portion of this case, how important their testimony will be to the trial, and whether any loss of live testimony is threatened by Massachusetts venue, the Court, in its discretion, holds that Century has, on the record now before the Court, failed to carry its burden of showing that the proposed transfer is warranted.

### III. CONCLUSION

The Motion to Dismiss or in the Alternative for Transfer is DENIED. To the extent that the motion is one for transfer, it is denied without prejudice to its being renewed at a future date.

---

5. The Court acknowledges that it remains an open issue whether the integration clause will bar much of the testimony from coming in at trial. *See supra* note 2. As the number of witnesses on both sides on this issue are essentially equal, whether this testimony is permitted at trial has no effect on the convenience of the witnesses.

6. To the extent that compliance with the regulations is subjective—and thus not readily determinable from a review of documents—the Court

would expect a more or less equal number of witnesses to be called by both sides to contest this point.

7. Moreover, given the inflated nature of Century's witness list, Century appears to have several individuals who can testify to the same points. Thus, should one be a former employee not amenable to service in Massachusetts or to the request of Century, there seems a good chance that the testimony of one of the redundant witnesses could be secured.