NEW ENGLAND WELDING
CONTRACTORS, INC.,
Plaintiff,

v.

HYDRA–MACHINERY SALES,
INC., Defendant.

Civ. A. No. 88–0116–F.

United States District Court,
D. Massachusetts.

Feb. 9, 1989.

Harvey B. Heafitz, Heafitz & Hopwood,
Newton, Mass., for plaintiff.

Richard D. Glovsky, Boston, Mass., for
defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

This case involves a dispute over a deposit made on the planned purchase of a used piece of equipment known as a Hilgers C17 ("C17"). Plaintiff, New England Welding Contractor, Inc. ("NEWC"), the purchaser, is a Massachusetts corporation and defendant, Hydra–Machinery Sales, Inc. ("HMS"), the seller, is a South Carolina corporation. The case is before the Court on HMS' motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and NEWC's motion for injunctive relief. For the reasons set forth below, the Court will allow defendant's motion to dismiss and deny plaintiff's motion for injunctive relief.

## I. BACKGROUND

In the personal jurisdiction inquiry, plaintiff has the burden of establishing the Court's jurisdiction over the defendant. *Home Owners Funding Corp. of America v. Century Bank,* 695 F.Supp. 1343, 1344 (D.Mass.1988). Given the close question of this Court's jurisdiction over HMS in this case, the Court permitted plaintiff further discovery on this issue and held an evidentiary hearing on the motion to dismiss. While cases like *Home Owners* and other progeny of Judge Keeton's *North American Video Corp. v. Leon,* 480 F.Supp. 213 (D.Mass.1979), recognized that on a rule 12(b)(2) motion, plaintiff is only put to establishing a prima facie case, because of the specifically set nature of this hearing and the determinative nature of the issue, this Court holds plaintiff to making its case for jurisdiction over HMS by a preponderance of the evidence. 2A Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 12.07[2.–2] n. 5 (2d ed.1985) (and cases collected therein); *contra Val Leasing, Inc. v. Hutson,* 674 F.Supp. 53, 54–55 (D.Mass.1987). NEWC may satisfy this burden through submission of affidavits and other admissible evidence demonstrat-

ing a basis for this exercise of jurisdiction. *See Home Owners*, 695 F.Supp. at 1344 (and cases cited therein). The facts relevant to NEWC's case for personal jurisdiction are as follows.

Sometime in November 1987, the parties engaged in initial inquiry regarding the sale of the equipment. There is dispute as to which party commenced this inquiry: NEWC claims that HMS acted first with advertising and telephoning, while defendant maintains that NEWC first called HMS to inquire about the equipment. HMS does admit to advertising in national trade journals and there is agreement between the parties that there were many telephone calls and much correspondence concerning NEWC's transaction. There is also numerous correspondence in evidence involving different aspects of the transaction.

The apparent agreement was that the C17 would be delivered approximately four months after the parties had reached tentative agreement in November 1987. The Court notes that at the hearing on these motions plaintiff's counsel disputed the existence of a contract. Be that as it may, on or about March 9, 1988, NEWC sent HMS a $25,000.00 deposit on the C17 with a letter conditioning the acceptance of the deposit on, *inter alia*, a delivery date of no later than the first week of April 1988.

Following HMS' receipt of the correspondence and the deposit, there arose some problem with delivering the C17 by the date required. NEWC ended up going directly to the manufacturer and purchasing the C17 from it. NEWC now seeks to recover its deposit from HMS alleging a breach of contract as well as chapter 93A violations. HMS has noted its contemplation of a similarly based counter suit should it be forced to plead in this or another forum.

The affidavit of HMS' president, Garth E. McGillewie, is unrefuted in its statements that HMS is not registered to do business in Massachusetts, does not maintain an office or sales force in Massachu-

setts, has never entered into any other transaction in Massachusetts and did not physically enter the Commonwealth in this transaction.[1] McGillewie's affidavit also establishes that all meetings between the parties occurred outside of Massachusetts.

NEWC provides the affidavit of its president, John Waitkus, accompanied by much correspondence between the parties. Waitkus states that he received many "mass mailings" and telephone calls from HMS soliciting his business. Waitkus' affidavit also recites that other persons, including one Bill Doherty, had informed Waitkus that they, too, had been contacted by McGillewie soliciting business. This evidence of what other persons had told Mr. Waitkus is blatant hearsay falling without any conceivable exception and, therefore, the Court may not consider it. Fed.R.Evid. 801(c).

## II. DISCUSSION

Analysis of personal jurisdiction over out-of-state defendants is a two-step process. First, the Court must determine whether the plaintiff's evidence satisfies the long-arm statute, Mass.Gen.Laws ch. 223A, § 3. Second, plaintiff must establish that the maintenance of the action against the defendant does not offend due process. *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 983 (1st Cir.1986).

The first hurdle is easily cleared in this case as, from the facts stated, it cannot be cognizably disputed that HMS both transacted business and contracted to supply goods in the Commonwealth as this conduct is defined under the long-arm statute. Mass.Gen.Laws ch. 223A, § 3(a) and (b). *See, e.g., Ealing Corp.*, 790 F.2d at 983 (holding that the defendant's sending of a telex from the United Kingdom to the Massachusetts plaintiff was sufficient to satisfy the transacting business requirement); *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 932 (1st Cir.1985) (holding that mailing four letters and making one

---

**1.** At the hearing, plaintiff's counsel raised for the first time the issue of McGillewie's citizenship. Even overlooking the fact that plaintiff failed to raise this issue in a timely manner, it does not pertain to the jurisdictional inquiry, as HMS, not McGillewie, is the party in question.

telephone call to Massachusetts satisfied section 3(a)).

With regard to the due process minimum contacts requirement, NEWC must prove that HMS "purposefully avail[ed] itself of the privilege of conducting activities within [Massachusetts], thus invoking the benefits and protections of its laws[,]" *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), and therefore, "should reasonably anticipate being haled into court [here]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). However, "[w]here an out-of-state party contracts with a resident of the forum state, that contract *alone* does not establish sufficient minimum contacts." *Beaver Builders v. Schnip Building,* 622 F.Supp. 1051, 1055 (D.Mass.1985) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (emphasis in original); *see, e.g., Droukas v. Divers Training Academy, Inc.,* 375 Mass. 149, 159, 376 N.E.2d 548, 554 (1978) (held no jurisdiction in Massachusetts over Florida defendant in breach of warranty action where defendant's only contact with the state was the supplying of the goods which were the subject of the contract in dispute).

The *Burger King* court recognized that the "Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which it has established no *meaningful* 'contacts, ties or relations.'" 471 U.S. at 471–72, 105 S.Ct. at 2181 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945) (footnote omitted)) (emphasis added). In determining whether defendant has established such "meaningful ties" in a single contract case, the *Burger King* court developed what has been called the "contract plus" analysis. *Marine Charter & Storage Ltd., Inc. v. Denison Marine, Inc.,* 701 F.Supp. 930 (D.Mass.1988). This inquiry involves consideration of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing [all of which] must be evaluated in determining whether the defendant pur-

posefully established minimum contacts with the forum." *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185.

In this case, there is nothing in the prior negotiations or the alleged contract indicating an agreement or contemplation of activity beyond this transaction. Also, there is nothing which reveals a continuing relationship between the parties with regard to this contract such as maintaining or servicing the C17. *See, e.g., id.* (maintaining jurisdiction over a Florida defendant who had transacted a single contract for the sale of a yacht with the Massachusetts plaintiff where there was a continuing relationship under the contract concerning defendant's care of the yacht). This case is more difficult than *Marine Charter* as there are few definitely settled contract terms. The only matter which approximates a further contact in this relationship is the mention of a warranty provision. It is undisputed, however, that it would have been the manufacturer, not HMS, who would have had to fulfill any future obligations under the purported warranty. HMS was only the importer and sale facilitator in this transaction. This isolated transaction with its attendant negotiations and communications, as far as plaintiff has demonstrated, is HMS' only contact with the Commonwealth.

### III.  CONCLUSION

Considering the relationship between these parties as well as HMS' limited activity in the Commonwealth, the Court concludes that it would not be in keeping with the law defining due process on this question to allow the maintenance of this action against HMS in this forum.

For this reason, the Court hereby ALLOWS defendant's motion to dismiss for lack of personal jurisdiction. Having allowed this motion, the Court need not reach the merits of plaintiff's motion for injunctive relief and it is, therefore, DENIED.

It is So Ordered.