PRINCESS HOUSE, INC., Plaintiff,

v.

Rita LINDSEY, Herb Lindsey, and Debbie Kraft, Defendants.

Civ. A. No. 90–11986–WF.

United States District Court,
D. Massachusetts.

Feb. 5, 1991.

George W. Mykulak, Gary R. Greenberg, Goldstein & Manello, Boston, Mass., for plaintiff.

Hill & Barlow, Timothy J. Dacey, III, Frances S. Cohen, Boston, Mass., for defendants.

REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO TRANSFER CASE TO WESTERN DISTRICT OF MISSOURI (DOCKET ENTRY # 11)

MARIANNE B. BOWLER, United States Magistrate Judge.

Defendants' Motion to Transfer Case to the Western District of Missouri was filed on September 5, 1990. (Docket Entry # 11). As grounds for their motion, the

defendants, Rita Lindsey, Herb Lindsey, and Debbie Kraft (hereinafter the "Lindseys"), argue: (1) the claims involve acts allegedly committed in Missouri and the neighboring states; (2) Missouri is a more convenient forum for the parties and the witnesses; and (3) the interests of justice weigh in favor of transfer. The plaintiff, Princess House, Inc. (hereinafter "Princess House"), opposed the Lindseys' motion, asserting that the defendants failed to make a sufficient showing to warrant transfer. (Docket Entry # 15). Specifically, Princess House argues that the convenience of its own witnesses, the application of Massachusetts law to the claims asserted, and the pendency of a related action in this district require that plaintiff's choice of forum remain undisturbed. The Lindseys filed a reply to Princess House's opposition to the motion to transfer, contending that plaintiff's list of witnesses, the pendency of another proceeding in this district, and the existence of several choice of law issues regarding the claims asserted in the complaint are not sufficient bases to warrant denial of the defendants' motion to transfer. The instant case was referred to this court by the district judge on November 2, 1990 for Report and Recommendation on the defendants' motion to transfer. This court held a hearing pursuant to the motion in question on December 11, 1990.

## FACTS

Plaintiff, Princess House, a Massachusetts corporation, is in the business of manufacturing, distributing, and selling home decorative and giftware items throughout the United States. (Docket Entry # 1, ¶ 1). These products are distributed through the "Home Party Plan" method of direct sales by use of independent contractors. (*Id.*) The Lindseys, three Missouri residents, are individual contractors in the Princess House network. Princess House brought this action against the Lindseys for damages and injunctive relief on the grounds that they allegedly engaged in improper activities which resulted in a breach of their contractual obligations to Princess House, intentional interference with Princess House's contractual and business rela-

tionships, and misappropriation and/or wrongful use of trade secrets. (*Id.*). This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties and the amount in controversy exceeds $50,000.00 exclusive of interest and costs. (Docket Entry # 1, ¶ 2). Prior to initiating this suit, Princess House brought an action against Jewels by Park Lane, Inc. (hereinafter "Park Lane"), which, according to Princess House, is related to this action. The Honorable Judge Rya W. Zobel, U.S.D.J., is currently presiding over contempt proceedings in the Park Lane case.

## DISCUSSION

### A. *Venue Pursuant to 28 U.S.C. § 1391(a)*

In a civil action founded solely on diversity of citizenship, venue is proper "in the judicial district in which all plaintiffs reside or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). The term "reside" for purposes of a corporation is defined as "any judicial district in which it [the corporation] is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

■ Princess House is incorporated in Massachusetts. Venue is, therefore, appropriate in this district. All three defendants are residents of the state of Missouri. (Docket Entry # 28, ¶ 1; Docket Entry # 29, ¶ 1; Docket Entry # 30, ¶ 1). Venue is, accordingly, also proper in the Western District of Missouri. The Lindseys further contend that venue is proper in this alternative forum because the claims arose in that district. (Docket Entry # 28, ¶ 13; Docket Entry # 29, ¶ 8; Docket Entry # 30, ¶ 8).

### B. *Transfer Pursuant to 28 U.S.C. § 1404(a)*

Title 28 U.S.C. § 1404(a), authorizing change of venue, provides in pertinent part:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil ac-

tion to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Where the action might have been brought in the Western District of Missouri, transfer is appropriate if it will serve the convenience of the parties and the witnesses and the interests of justice.

■ The decision to transfer a case to a more convenient forum pursuant to § 1404(a) is a matter within the discretion of the district court. *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir.1977); *See Home Owners Funding Corp. of America v. Century Bank*, 695 F.Supp. 1343, 1347 (D.Mass.1988) (decision to transfer discretionary for court). Such a decision requires a balancing of several factors, including plaintiff's choice of forum. A presumption in favor of plaintiff's choice of forum exists, and the burden of proving that transfer is warranted rests with the defendant. *Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. 165, 169 (D.Mass.1982), *aff'd*, 782 F.2d 295 (1st Cir. 1986). The weight accorded to plaintiff's choice depends upon the circumstances of the case. *Air & Water Technologies v. Rawls*, No. 89–1847–WF, 1990 WL 5592 (D.Mass. Jan. 10, 1990); *Brant Point v. Poetzsch*, 671 F.Supp. 2, 5 (D.Mass.1987).

■ Other relevant factors include the convenience of the parties and the witnesses, the availability of documents, the possibilities of consolidation and coordination, and the interests of justice. *Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259, 1261 (D.Mass.1988); *Sea Hunt Corp. v. O.S. DeBraak, Ltd.*, No. 86–2758–MA, 1986 WL 15476 (D.Mass. Dec. 23, 1986).

Transferring the case to the Western District of Missouri does not appear to enhance the convenience of the parties. Princess House is a Massachusetts corporation. The Lindseys are Missouri residents. Although the defendants will be inconvenienced by a Massachusetts trial, the plaintiff will be inconvenienced if the case is transferred to Missouri. In effect, transfer would merely shift the inconvenience from one party to the other. *See Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. at 169 (discussing factors involved in decision to transfer).

■ Contrary to the defendants' position, Princess House argues that it is more convenient to litigate in Boston because this court is more accessible to its general counsel and litigation counsel. Specifically, the plaintiff states that local general counsel may attend pre-trial proceedings to evaluate the proceedings and that litigation counsel are located in Boston and New York, "a mere shuttle ride away." (Docket Entry # 17, ¶ 8). This court finds no merit in this argument. No case articulates that the convenience of counsel is a consideration in deciding a motion to transfer pursuant to § 1404(a). Whether this court is more convenient to the plaintiff's counsel is, accordingly, of no consequence. *See Formaldehyde Institute v. U.S. Consumer Product*, 681 F.2d 255, 262 (5th Cir.1982) (convenience of counsel not appropriate concern in balancing considerations for venue purposes); *S–G Securities, Inc. v. Fuqua Investment Company*, 466 F.Supp. 1114, 1122 (D.Mass.1978) (location of parties' counsel accorded little if any weight).

■ Convenience of the expected witnesses is "[p]robably the most important factor, and the factor most frequently mentioned." *Brant Point v. Poetzsch*, 671 F.Supp. at 5 (citations omitted). The court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify. *Id.* at 3–4. A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail. *Id.* at 4 (citing *Factors, Etc., Inc. v. Pro Arts, Inc.* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979)).

Consistent with these requirements, the Lindseys have filed declarations listing critical witnesses and their anticipated testimony. (Docket Entries # 28, # 29, # 30). The witnesses in the Declaration of Rita Lindsey (Docket Entry # 28) include: a

member of her sales organization, who is expected to testify that she joined Park Lane because of problems she had experienced with Princess House and that Rita Lindsey never asked or told her to terminate her sale of Princess House products; two other sales representatives, who are expected to testify that they were looking for another franchise business prior to Rita Lindsey's joining Park Lane because of problems associated with Princess House which caused a substantial drop in their income; and a fourth sales representative, who is expected to testify that she committed to selling another line of products through the party plan method before Rita Lindsey joined Park Lane because her income dropped substantially due to Princess House's inability to provide her with products to sell. (Docket Entry # 28, ¶ 9).

The Lindseys also indicate an intention to call the following witnesses: a former national Princess House award winner (the daughter of Rita and Herb Lindsey), who is expected to testify that she left Princess House prior to Rita Lindsey's involvement with Park Lane, because she could no longer make a "decent" living with Princess House; a top seller of Princess House products, who is expected to testify that many of her sales people complained that they could no longer make money with Princess House due to the lack of availability of the products and that she was planning on selling the Park Lane line prior to Rita Lindsey's involvement with Park Lane; a sales manager and another sales representative, both of whom are expected to testify that they were planning on joining Park Lane prior to Rita Lindsey's involvement with Park Lane; and finally, a member of Rita Lindsey's sales force, who is expected to testify that she was losing a substantial amount of income and business with Princess House, and that she told Princess House that unless something was done she would have to find another livelihood. (Docket Entry # 28, ¶ 9).

In addition to these nine witnesses, Herb Lindsey lists another Princess House sales representative, who is expected to testify that she considered changing from Princess House to another line of work prior to his

involvement with Park Lane because of financial hardship and Princess House's inability to provide products for her customers. (Docket Entry # 29, ¶ 5). Similarly, Debbie Kraft ("Kraft") reiterates the need to call the witnesses previously listed and adds two others: an important "Organizer" for Princess House, who is expected to testify that she left Princess House to become a sales representative for Park Lane due to Princess House's inability to supply sufficient amounts of products; and a member of Kraft's sales force, who is expected to testify that she joined Park Lane because of similar problems with Princess House and that Kraft never told her to stop selling Princess House products. (Docket Entry # 30, ¶ 4).

With regard to the nature and quality of the trial testimony, the anticipated testimony of the Lindseys' witnesses is relevant to the question of whether the defendants breached their contractual obligations to Princess House by disclosing proprietary information. The testimony is also relevant to the issue of whether the defendants intentionally interfered with Princess House's business and contractual relationships by improperly recruiting Princess House sales representatives to join Park Lane. Given that Princess House alleges that the Lindseys engaged in a course of conduct designed to undermine Princess House and undercut its business and contractual opportunities, the testimonial evidence offered by the Lindseys is important in that it goes to the central factual issues of the plaintiff's case. (*See* Docket Entry # 1, ¶¶ 68–80) (stating allegations that Lindseys engaged in course of conduct which resulted in breach of their contractual obligations and intentional interference with Princess House's business and contractual relationships).

Another relevant consideration in analyzing the convenience of witnesses is the cost of obtaining the presence of the witnesses. *Coats Company, Inc. v. Vulcan Equipment Company, Ltd.*, 459 F.Supp. 654, 656 (N.D.Ill.1978). The costs of travel and lodging of the witnesses to be called by the Lindseys to testify in their behalf at a

Massachusetts trial would be great. The Lindseys aver that none of the critical witnesses would be willing to incur these expenses personally. (Docket Entry # 28, ¶ 11). The defendants further state that they, themselves, do not have the resources to satisfy this financial burden. *See Galonis v. NBC*, 498 F.Supp. 789, 793 (D.N.H. 1980) (taking into account financial strength of parties). Even if the Lindseys could afford to pay these expenses, they believe the witnesses would not agree to travel to Massachusetts because of the major disruption it would cause to their daily schedules, i.e. loss of income due to absence from work and the financial burden of placing children in child care facilities. (Docket Entry # 28, ¶ 11). This consideration certainly supports transfer for the convenience of the witnesses.[1]

As stated earlier, the court should also consider whether the witnesses can be compelled to testify in either the transferor or the transferee district. *Brant Point v. Poetzsch*, 671 F.Supp. at 4 (citations omitted). As discussed above, the Lindseys have stated that the critical witnesses will refuse to appear in this court to testify. Moreover, these critical witnesses cannot be compelled to testify in this district. It is well settled that a court should procure live testimony of material non-party witnesses at trial rather than being forced to rely upon deposition evidence. *Id.* "This is especially so when the 'qualitative value' of the witnesses' testimony is high." *Id.* (citation omitted). If this action remains in this district, the greatest portion of the defendants' case will consist of deposition evidence. It is the position of this court that because the testimony of the Lindseys' witnesses is significant insofar as it directly refutes the allegations set forth in the complaint, transfer to the Western District of Missouri appears appropriate.

On the contrary, Princess House argues that the unavailability of judicial process to compel the attendance of the Lindseys' witnesses is an insufficient basis for transfer. Princess House cites: *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923, 931 (W.D. Mo.1985); *Micheel v. Haralson*, 586 F.Supp. 169, 173 (E.D.Pa.1983); and *First National City Bank v. Nanz, Inc.*, 437 F.Supp. 184, 189 (S.D.N.Y.1975), in support of its position. (Docket Entry # 17, p. 12). Princess House failed, however, to mention the qualifying reason for each court's rejecting the unavailability to judicial process as an argument for transfer. In each case, the defendants had never suggested or established that their non-party witnesses could not or would not appear at trial in the transferor forum. That is not the situation in this case. As previously discussed, the Lindseys have averred, under penalty of perjury, that they are informed that none of these critical witnesses would be willing to travel to Massachusetts for trial. (Docket Entry # 28, ¶ 11; Docket Entry # 29, ¶ 3; Docket Entry # 30, ¶ 3).

Princess House contends, in an apparent argument that the convenience of these witnesses should not have a material bearing on this court's decision of whether or not to transfer the case, that it is highly unlikely that all of the Lindseys' witnesses will ultimately testify at trial. (Docket Entry # 17, p. 12). Such an argument is speculative at best, and this court does not find it persuasive. *See Brant Point v. Poetzsch*, 671 F.Supp. at 4 (attempt to determine admissibility of apparently relevant testimony of defendants' witnesses is premature in examination of convenience of witnesses pursuant to § 1404(a)); *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1051 (N.D.Ill.1982) (speculation as to whether testimony of witnesses would in fact be cumulative is inappropriate in deciding motion to transfer).

Princess House also criticizes the Lindseys for listing Missouri residents or persons within the 100 mile subpoena power of

---

1. In its Supplemental Memorandum in Opposition to Defendants' Motion to Transfer (Docket Entry # 24), Princess House argues that Park Lane, Inc. is paying the expenses of all of the defendants in this action, including their attorneys' fees. Princess House does not, however, provide any evidence demonstrating that Park Lane has offered, or will offer, to pay the travel and lodging expenses of the Lindseys' witnesses. Given that this court places great weight on the convenience of these non-party witnesses, the plaintiff's argument is not persuasive.

a Missouri court as their critical witnesses. (Docket Entry # 17, p. 13). Princess House does not, however, list any witnesses who *are* within the subpoena power of the United States District Court for the Western District of Missouri. The witnesses listed by Princess House include residents of Connecticut, Massachusetts, Illinois, Pennsylvania, Idaho, Oregon, Minnesota and Michigan. Considering the allegations asserted against the Lindseys, this court finds it unusual that the plaintiff has not listed any Missouri witnesses to testify to the alleged wrongful acts committed by the defendants in their capacities as Princess House sales representatives in Missouri. (*See* Docket Entry # 1, ¶¶ 68–80) (stating acts which allegedly resulted in breach of contractual obligations, intentional interference with Princess House's business and contractual relationships, and misappropriation of trade secrets).

Princess House contends that this court is a more convenient forum, because its officers, employees and witnesses are able to testify without disrupting their schedules. Of the four former high-ranking Princess House officers listed as prospective witnesses, only one is a Massachusetts resident. The other three witnesses are residents of Connecticut, Pennsylvania, and Idaho, and are, therefore, not subject to the subpoena power of a court sitting in this state. It is uncertain whether they are still under any contractual obligations to Princess House. Seven of the witnesses are Princess House employees. Presumably the witnesses under the employ of Princess House will be present at trial. *See Home Owners Funding Corp. of America v. Century Bank*, 695 F.Supp. at 1348 (stating that employee witnesses would presumably be present at trial); *Galonis v. NBC*, 498 F.Supp. 789, 793 (D.N.H.1980) (little fear that live testimony of most of key witnesses, who were employees of a party, would be sacrificed by transfer of case). The remaining seven witnesses: three Princess House independent contractors; three Park Lane officers; and one individual whose connection to this case is in dispute, all reside outside the subpoena power of this court. It is unclear whether any of the witnesses is subject to the subpoena power of a court sitting in the transferee district. Nevertheless, it seems that the plaintiff's witnesses would be no more inconvenienced by trial in the Western District of Missouri than in this district.

■ The Lindseys also assert that all of the relevant documentary evidence in this case: correspondence; sales records; agreements; and monthly bulletins from Princess House concerning the unavailability of products, is located in Missouri. (Docket Entry # 28, ¶ 12; Docket Entry # 29, ¶ 7; Docket Entry # 30, ¶ 7). Given the mobility of these documents, however, this court does not find this factor significant in its determination of whether to transfer this case. *Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259, 1262 (D.Mass.1988) (defendants' argument that bulk of documents were located in transferee district insufficient to warrant transfer); *B.J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091, 1104 (E.D.Pa.1977) (location of pertinent records and documents in transferee district not an important factor in deciding motion to transfer pursuant to § 1404(a)).

■ As previously mentioned, the possibility of coordination or consolidation is a factor to consider in analyzing a motion to transfer. *See Sea Hunt Corp. v. O.S. DeBraak, Ltd.*, No. 86–2758–MA, 1986 WL 15476 (D.Mass. Dec. 23, 1986). Princess House argues that this action should be adjudicated in Massachusetts because of the existence of a pending related action. The Honorable Judge Rya W. Zobel, U.S. D.J., is currently presiding over a contempt proceeding filed by Princess House against Park Lane to enforce an order issued in previous litigation between the parties. (Docket Entry # 21, p. 4). Counsel for Princess House argues that the Park Lane action was not designated as a related case on the civil cover sheet for this action, because, at the time Princess House filed this action against the Lindseys, the clerk suggested that "under the circumstances it would be inappropriate to make such [a] designation." (Docket Entry # 21, p. 5). Counsel also avers that he advised the

clerk by a letter, which accompanied the filing of the complaint in this action, of his firm's belief that it "may be a related case" to the Park Lane action. (Docket Entry # 21, Exhibit A). Princess House contends, accordingly, that it took efforts to raise the relationship between the two actions at the outset of this suit against the Lindseys.

Princess House argues, on the bases of the facts asserted above, that transfer is inappropriate because "litigation of related claims in the same tribunal is favored to avoid duplicitous litigation, unnecessary expenses, judicial waste, and inconsistent results." *Cambridge Filter Corp. v. International Filter Corp.*, 548 F.Supp. 1308, 1310 (D.Nev.1982). The plaintiff's argument presupposes that the actions against Park Lane and the Lindseys are "related claims." The clerk thought they should not be designated as such. Moreover, since its initial filing against the Lindseys, Princess House has not undertaken any further steps to have these actions consolidated or reflected as related cases.[2] Furthermore, the two actions will not be litigated in the same tribunal. Given that the same district judge is not assigned to both the Park Lane contempt proceedings and this action against the Lindseys, Princess House's argument that transfer will result in inconsistent results is not persuasive. Even if both actions remained in this district, there is no guarantee of identical results. Consequently, Princess House is no more disadvantaged by potential inconsistencies resulting from transfer to the Western District of Missouri than it would be if the case remained in this district.[3]

Both parties assert, in the interests of justice, that it is appropriate to conduct the trial of a diversity case in a forum that is at home with the state law that governs the action. *See Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964) (citation omitted) (appropriateness in having trial of diversity case in forum home with state law governing action). The parties disagree, however, with respect to what law applies. The Lindseys contend that Missouri law is applicable to both the contract claims and the tort claims. Princess House, on the contrary, argues that Massachusetts law applies to these claims.

None of the agreements at issue include a choice of law provision. (*See* Docket Entry # 1, Exhibits E, F, and G) (copies of agreements signed by Rita Lindsey, Herb Lindsey, and Debbie Kraft, respectively). Although the "Consultant's Agreement" signed by Kraft provides for acceptance upon receipt at Princess House's Massachusetts office, the agreements signed by Rita and Herb Lindsey contain no such provision. *Id.* The Lindseys argue that they joined the Princess House sales network in Missouri. (Docket Entry # 28, ¶ 2; Docket Entry # 29, ¶ 2; Docket Entry # 30, ¶ 2). As independent contractors, the Lindseys organized, trained, recruited, and directed, at their own expense, sales representatives throughout Missouri and the neighboring states. (Docket Entry # 28, ¶ 3; Docket Entry # 29, ¶ 3; Docket Entry # 30, ¶ 3). The defendants' entire sales force is located in Missouri and the nearby states. They have no ties to Massachusetts whatsoever, i.e., real or personal property holdings, mailing addresses, tele-

---

**2.** Despite Princess House's assertion that consolidation is not feasible due to the summary nature of the contempt proceedings, it still has not taken any measures to establish a relationship, if any, between this action and the action against Park Lane.

**3.** Princess House also maintains that this action should remain in this district, because the discovery demands in the Park Lane action request information about the Lindseys. It is uncertain whether Princess House purports to argue: (1) the two actions are related because the discovery demands in the Park Lane action involve

information about the defendants in this action; or (2) given that the discovery demands in the Park Lane action involve information about the Lindseys, this action should remain in this district to avoid duplicitous litigation. If Princess House intended the former, its argument is not persuasive because, as stated earlier, Princess House did not initiate any steps toward having these actions reflected as related cases. If Princess House intended the latter, its argument is not persuasive because, as discussed earlier, documents can be transported or photocopied and mailed.

phone listings, bank accounts, or any business relations. (Docket Entry # 28, ¶ 5; Docket Entry # 29, ¶ 4; Docket Entry # 30, ¶ 6).

All of the alleged wrongful acts would have had to occur in Missouri and the neighboring states, because that is the only region in which the Lindseys conducted business for Princess House. Even Princess House's pleadings state that the series of meetings at which the Lindseys allegedly improperly recruited other Princess House independent contractors to join Park Lane transpired in Missouri and the neighboring states. (Docket Entry # 1, ¶ 71). Specifically, Princess House alleges that on one occasion Kraft tried to persuade a Princess House Area Organizer to attend a Park Lane meeting in Kansas City, Missouri, arranged by Rita Lindsey. (Id., ¶ 73). Princess House also alleges that the Lindseys verbally attacked Princess House in their concerted efforts to recruit other independent contractors into the Park Lane organization. (Id., ¶ 75). The alleged injuries sustained by Princess House occurred to its sales and recruiting efforts in Rita Lindsey's marketing area in Missouri. (Docket Entry # 1, ¶ 87). The operative facts of this case, as reviewed above, have significant connections with the state of Missouri. Although this court will not, at this time, determine the choice of law issue, the facts as alleged in Princess House's Complaint (Docket Entry # 1) and in the Lindseys' Declarations (Docket Entry # 28) point toward the application of Missouri law. *See Bushkin Associates, Inc., v. Raytheon Co.*, 393 Mass. 622, 632, 473 N.E.2d 662 (1985) (quoting Restatement (Second) of Conflicts of Laws § 188(1) (1971)) (absent choice of law by parties, their rights are determined by local law of state which has the most significant relationship to transaction and parties).

Princess House's complaint includes a claim against the Lindseys for wrongful use of trade secrets pursuant to Mass.Gen. Laws ch. 93, §§ 42, 42A. (Docket Entry # 1, ¶¶ 121–130). The Lindseys concede that Massachusetts law governs this claim. (Docket Entry # 18, p. 9). Princess House argues that this action should remain in this district, because this court is better suited to adjudicate the claim under Mass. Gen.Laws ch. 93. Whether this action remains in Massachusetts or is transferred to Missouri, either district court will have to apply the law of another state to one or more of the claims asserted by Princess House. The fact that Massachusetts law governs one claim of several is not compelling enough, in and of itself, to deter this Court from transferring this action.

## CONCLUSION

In conclusion, because this Court finds that: (1) the Western District of Missouri is a more convenient forum for all of the Lindseys' witnesses in terms of time, expense, and most importantly, amenability to judicial process; (2) the plaintiff's witnesses, who are either not amenable to the subpoena power of this court or are employees who will presumably appear to testify at their employer's direction, will be no more inconvenienced by a trial in Missouri than in Massachusetts; and (3) the operative facts of this case have, at most, minimal connections with this district, this court RECOMMENDS[4] that defendants' Motion to Transfer Case to the Western District of Missouri (Docket Entry # 11) be ALLOWED.

---

**4.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation and must identify the portion of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after the service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).