Yvonne BOATENG, Plaintiff,

v.

GENERAL DYNAMICS CORPORATION and General Dynamics Armament and Technical Products, Inc., Defendants.

Civil Action No. 05–40222–FDS.

United States District Court, D. Massachusetts.

Nov. 2, 2006.

---

Harold James Hartley, James E. O'Connell, Barbara A. Robb, Shilepsky O'Connell Casey Hartley Michon Yelen, LLP, Boston, MA, for Plaintiff.

David H. Gibbs, Bowditch & Dewey LLP, Boston, MA, Ryan T. Killman, Bowditch & Dewey LLP, Worcester, MA, for Defendants.

### *MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO TRANSFER VENUE*

SAYLOR, District Judge.

This is an action alleging unlawful race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and intentional and negligent mis-

representation. Plaintiff Yvonne Boateng contends that her employer, defendant General Dynamics Armament and Technical Products, Inc. ("GDATP"), unlawfully lowered her performance rating, deprived her of salary increases, and ultimately terminated her because of her race and in retaliation for exercising her protected rights under Title VII. She further contends that GDATP made false representations regarding her employment that induced her to sell her Massachusetts home and move to North Carolina. Pending before the Court is defendants' motion to transfer venue, in which they seek transfer of this case to the Western District of North Carolina. For the reasons stated below, the motion will be denied.

## I. *Factual Background*

GDATP designs, develops, and produces defense products for all branches of the United States Department of Defense and for the ministries of defense of more than thirty allied nations. It has been headquartered in Charlotte, North Carolina, since September 2003. Prior to that time, GDATP was headquartered in Burlington, Vermont. GDATP is a wholly owned subsidiary of General Dynamics Corporation ("General Dynamics"), which has its headquarters in Falls Church, Virginia.

Boateng, an African–American female, began interviewing for a tax manager position with GDATP in August 2002. She received an offer of employment in October 2002. According to the offer letter, the offer was contingent upon a number of requirements, including execution of a Dispute Resolution Policy Agreement.

### A. *GDATP's Dispute Resolution Policy*

In July 2001, prior to Boateng's employment, GDATP instituted a Dispute Resolution Policy (the "Policy"). The Policy is binding on both GDATP and its employees, and establishes procedures for the resolution of employment disputes. Specifically, it mandates a four-step process for dispute resolution: (1) human resources review; (2) management review; (3) mediation; and (4) arbitration. Additionally, the Policy requires that, unless the parties otherwise agree, the arbitration hearing be held within twenty-five miles of the employee's work location, and that the arbitrator apply the substantive law of the state in which the employee is or was predominantly employed.

The parties dispute whether a copy of the Policy was provided to Boateng. According to defendants, a copy accompanied her offer letter; Boateng does not directly deny having received a copy, but states that she does not recall whether she did. Further, defendants contend that Boateng received a copy of the Policy with her orientation materials; that she was told she could access the Policy on the company's intranet system; and that in 2003—when the Policy was amended—copies of the amended Policy were provided to her via e-mail and a letter sent to her home. Plaintiff again does not directly deny those contentions, but states that she does not recall being informed of or receiving a copy of the Policy on any of those occasions.

In any event, Boateng signed a Dispute Resolution Policy Agreement on October 11, 2002, by which she agreed to resolve all claims arising out of her application for employment, employment, or termination of employment by the terms of the Policy. The Agreement also indicated that Boateng waived her right to jury trial and to file a lawsuit, except to enforce the terms of the Agreement.

### B. *Boateng's Job Performance*

Boateng began working as a tax manager at GDATP's headquarters in Burlington, Vermont, in November 2002. She

states that throughout her tenure at the Burlington office, she maintained her Massachusetts residence, staying in Burlington during the work week and returning to her home in Northborough, Massachusetts, for weekends, holidays, and vacations.

In her amended complaint, Boateng alleges that she "performed her job extremely well." She alleges that her supervisors' written appraisal of her 2003 job performance gave her an overall grade of "2," which meant "excellent." However, she also alleges that her performance and the accompanying recognition by her superiors were not well-received by Lawrence Friedman, the General Dynamics Land Systems Tax Manager. Friedman is a white male who resides in Sterling Heights, Michigan. The amended complaint includes several allegations regarding attempts by Friedman to belittle Boateng and to undermine her work.

### C. *Alleged Racially–Motivated Comments by Friedman*

According to Boateng, the racial motivation behind Friedman's comments and actions was revealed in June 2004. Boateng's direct supervisor, Peter Haskell, had asked her to travel to Michigan to meet with Friedman on June 28, 2004, because Friedman had purportedly expressed dissatisfaction with a draft tax return she had previously submitted. She alleges that when she arrived in Michigan, Friedman engaged in a public and discriminatory attack on her, allegedly stating: "I did not want your kind here"; "General Dynamics management is not suited to your kind"; "I have been here for 25 years, you are not going to get ahead of me"; and "you are not worth the pay you get." He also allegedly stated: "I'm from Missouri, and we own cattle there. The way a farm works, what the farmer says goes!"

### D. *Relocation to North Carolina*

Boateng alleges that as of June 2004 she was in the process of selling her home in Massachusetts and preparing to move to GDATP's new headquarters in North Carolina. Following the June 28th incident with Friedman, she informed Haskell that, in light of his discriminatory and harassing treatment, she was no longer willing to sell her home and relocate. She alleges that Haskell and other GDATP employees assured her that the situation would be remedied and that she would not have to work for or report to Friedman. She relocated to North Carolina in reliance on those representations.

### E. *Boateng's 2004 Performance Evaluation*

Boateng's 2004 job performance evaluation, which she received in March 2005, resulted in an overall rating of "4," which meant "needs improvement." Boateng contends that Friedman was involved in the evaluation process, and that is why she received a lower rating. She alleges that as a result of this lower rating, she was denied a bonus for 2004 and a raise for 2005.

### F. *Boateng's Termination from Employment*

Boateng met with Blair Guza, GDATP's Human Resources Manager, in March 2005 and with Dawn Archer, GDATP's Ethics Director, in April 2005. The parties dispute the content of these meetings. Boateng contends that she complained of race discrimination, expressed her desire to file a formal complaint, and inquired as to the process for filing such a complaint. Defendants contend that the meetings solely concerned Boateng's displeasure with her performance evaluation and that she made no mention of a desire to file a

discrimination claim or a formal complaint under the Dispute Resolution Policy.

Around this time, Boateng was asked to participate in a Performance Improvement Plan. According to Boateng, the plan required that she move to Michigan for a six-month period in order to work for Friedman directly. When Boateng refused to comply, a revised plan was issued in April 2005. She alleges that the revised plan still required her to work for Friedman in Michigan. Boateng again indicated that she was unwilling to participate in the plan. On April 22, 2005, Guza informed Boateng that she was being terminated. Defendants contend that she was terminated for a legitimate, nondiscriminatory reason having nothing to do with her race; specifically, her continually deficient performance and refusal to accept a mandatory Performance Improvement Plan.

Following her termination, Boateng filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed the charge because "[b]ased upon its investigation, the EEOC [was] unable to conclude that the information obtained establishe[d] violations of the statutes." She filed a subsequent Charge of Discrimination with the EEOC, which was dismissed as "not timely filed."

## II.  *Procedural History*

Boateng instituted the present action against General Dynamics on December 30, 2005. On March 15, 2006, she filed an amended complaint in which she named GDATP as an additional defendant. The five-count amended complaint alleges (1) race discrimination and retaliation in violation of 42 U.S.C. § 1981; (2) discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (3) retaliation in violation of Title VII; (4) intentional misrepresentation/fraud; and (5) negligent misrepresentation.

In April 2006, defendants filed a motion to transfer venue, as well as a motion to dismiss or, in the alternative, to compel arbitration and to stay litigation. In their motions, defendants indicate that the present motion to transfer venue should be decided prior to the motion to dismiss.

## III.  *Analysis*

■ Defendants seek a transfer of this action to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a). Section § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). As a threshold matter, the Court must determine whether this action could have properly been brought in the transferee court. After this initial determination, the Court must undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation omitted).

### A.  *Whether Venue is Proper in the Western District of North Carolina*

In a civil action not founded solely on diversity of citizenship, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). In the present action, Boateng's race discrimination and retaliation claims arise from her employment with and eventual termination from GDATP. Although initially headquartered in Burlington, Vermont, GDATP moved its headquarters to Charlotte, North Carolina, in September 2003. Thereafter, in June 2004, Boateng relocated to Charlotte to continue her employment with GDATP.

She continued to reside and work in Charlotte when her employment was terminated in April 2005. Accordingly, this action could have been properly brought in the Western District of North Carolina.

## B. Whether the Balance of Convenience and Fairness Weighs in Favor of a Transfer in Venue

The decision to transfer a case pursuant to § 1404(a) is a matter within the discretion of the district court. *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir.1977). In making that determination, the court must balance several factors, including plaintiff's choice of forum. *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D.Mass.1991). "A presumption in favor of plaintiff's choice of forum exists, and the burden of proving that transfer is warranted rests with the defendant." *Id.* (citing *Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. 165, 169 (D.Mass.1982)). A plaintiff's choice of forum is entitled to "great weight." *Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc.*, 56 F.Supp.2d 134, 141 (D.Mass. 1999) (quoting *Brookfield Mach., Inc. v. Calbrit Design*, 929 F.Supp. 491, 501 (D.Mass.1996)). "Other factors to consider include the convenience of the parties and witnesses, the availability of documents and the interests of justice." *Id.* The Court will consider each of these factors in turn.

### 1. Convenience of the Parties

Massachusetts is undoubtedly an inconvenient forum for GDATP, as it may have to produce documents and witnesses in Massachusetts, rather than in its home state of North Carolina. It may be marginally more convenient for General Dynamics as well, as its headquarters in Falls Church, Virginia, are slightly closer to Charlotte than to Worcester. However, transferring this case would similarly burden Boateng, who would have to bear the cost of hiring counsel in North Carolina and of traveling to and from that state. "The presumption in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the inconvenience from one party to the other." *Sigros v. Walt Disney World Co.*, 129 F.Supp.2d 56, 71 (D.Mass.2001). Further, "the balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it." *Id.* In the present action, defendants—a multi-national corporation and its wholly-owned subsidiary—are better situated to absorb and spread the costs of litigation than Boateng. As such, the convenience of the parties does not weigh in favor of transferring this case.

### 2. Convenience of the Witnesses

Of the factors considered by the court, the convenience of expected witnesses is "probably the most important factor, and the factor most frequently mentioned." *Princess House*, 136 F.R.D. at 18 (citations omitted). In considering this factor, the court looks at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Id.* "A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Id.*

Defendants have provided a list of twelve key witnesses and their anticipated testimony, contending that the action should be transferred because eight of the twelve reside in Charlotte, North Carolina. The remaining witnesses reside in Burlington, Vermont; St. Petersburg, Florida; Sterling Heights, Michigan; and Marion, Virginia, respectively. Defendants emphasize that none of the material witnesses,

except for Boateng herself, reside in Massachusetts.

As noted above, the convenience of expected witnesses is a significant factor in the convenience calculus; however, if "the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance." *Sigros*, 129 F.Supp.2d at 71. In this case, nearly all of the key witnesses (eleven out of twelve) are defendants' employees, who will presumably appear in Massachusetts at defendants' direction. Defendants have only identified a single witness who is no longer their employee—Boateng's former supervisor, Peter Haskell—and have made no allegations that he would be unwilling or unable to appear in Massachusetts. Moreover, because Haskell resides in Vermont, it would likely be more convenient for him to travel to Massachusetts than to North Carolina.

### 3. *Availability of Documents*

The location of documentary evidence is also a factor to be considered by the Court. *See Veryfine Prod., Inc. v. Phlo Corp.*, 124 F.Supp.2d 16, 24 (D.Mass.2000). "However, since most records and documents now can be transported easily or exist in miniaturized or electronic form ... their location is entitled to little weight. This is particularly true with the development of photoduplication, facsimile transmission, the Internet, and the easy availability, excellent reproducibility, and relatively low cost of hard and electronic copies." *See* 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER., FEDERAL PRACTICE AND PROCEDURE, § 3853.

Defendants contend that most, if not all, of the documents or other proof in this case is located at GDATP's headquarters in Charlotte, North Carolina. Nonetheless, this fact is insufficient to overcome the strong presumption in favor of plaintiff's choice of forum. The fact that the majority of evidence is already in defendants' possession ensures that they can produce it at trial, and negates any need to transfer the case in order to bring the records within the subpoena power. Further, defendants have made no showing that transporting the applicable records to Massachusetts would cause a hardship to their business.

### 4. *Interests of Justice*

Defendants contend that a transfer of this action to the Western District of North Carolina is in the interests of justice. In support of this contention, defendants first argue that the speed in which this case would reach disposition in North Carolina weighs in favor of transfer. Specifically, they contend that in 2005 the median time from filing to trial in the Western District of North Carolina was 27 months, whereas in the District of Massachusetts it was 31 months. According to Boateng, however, defendants' cited statistics are inaccurate. Boateng contends that the median time from filing to trial of a civil case was the same in both districts— 27 months. She further contends that the median time from filing to disposition of a civil case was actually shorter in Massachusetts than in the Western District of North Carolina—9.2 months compared to 10.3 months. Both plaintiff and defendants have provided sources that seem to support their respective statistical claims. It is therefore unclear to the Court whether the case would in fact be resolved more quickly and efficiently in North Carolina.

Defendants also contend that North Carolina has a far greater interest in the outcome of this case than does Massachusetts, because Boateng's claims concern her termination, which occurred in North Carolina. While it is certainly true that North Carolina has an interest in this litigation, Massachusetts has a substantial interest as well. Counts IV and V of

Boateng's complaint—in which she alleges intentional and negligent misrepresentation—have a direct connection to Massachusetts. Boateng alleges that defendants made certain false representations in order to induce her to relocate from Massachusetts, and that in reliance upon these representations, she sold her home in Massachusetts and moved to North Carolina. In addition to this connection to Counts IV and V of her complaint, Massachusetts also "has a substantive social policy of protecting its citizens and providing a forum for redress of grievances." *Nowak v. Tak How Inv., Ltd.*, 899 F.Supp. 25, 34 (D.Mass.1995).

\*　\*　\*　\*　\*　\*

In summary, the convenience of the parties does not warrant transfer to North Carolina, as it would merely shift inconvenience from defendants to Boateng, and defendants are best situated to absorb and spread the costs of this litigation. Convenience of the witnesses does not support transfer, because although a majority of the expected witnesses reside in North Carolina, virtually all of them are employed by defendants, and defendants can therefore readily procure their appearance in Massachusetts. The same is true for any documents or other proof that may be located in North Carolina. Finally, the interests of justice do not mandate transfer. Having weighed the various factors, the Court is not convinced that the balance of conveniences and fairness outweigh the strong presumption in favor of plaintiff's choice of venue.

## IV. *Conclusion*

For the foregoing reasons, defendants' motion to transfer venue is DENIED.

**So Ordered.**