**Mohammed ATARI, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**No. Civ.A. 02–10893–REK.**

United States District Court, D. Massachusetts.

July 17, 2002.

Andrew M. Abraham, The Sheff Law Office, Boston, MA, for Mohammed Atari, plaintiff.

Laurie E. Alexander–Krom, Murtha Cullina Roche Carens & DeGiacomo, LLP, Boston, MA, Barry J. Waters, Murtha Cullina Roche Carens & DeGiacomo, LLP, Boston, MA, for United Parcel Service, Inc., defendant.

Memorandum and Order

KEETON, District Judge.

#### I. Pending Motions

Pending for decision is defendant United Parcel Service's ("UPS") Motion to Transfer This Action to the U.S. District Court of New Jersey (*Docket No. 5*), along with Memorandum in Support of Transfer (*Docket No. 6*).

#### II. Background

Plaintiff Mohammed Atari filed suit against United Parcel Service (UPS) in Superior Court in Suffolk County, MA, on April 2, 2002. Atari's complaint alleged

negligent security on the part of UPS in relation to an assault Atari suffered at the hands of an unknown assailant at the UPS facility in Mahwah, NJ, on September 11, 2001. On May 16, 2002, UPS removed the case to United States District Court for the District of Massachusetts, and on May 25, 2002, filed a motion to transfer the case to the U.S. District Court for the District of New Jersey. Plaintiff, a Massachusetts resident, opposed the motion. A hearing was held on the matter on July 12, 2002.

The basic facts of the case are as follows. At the time of the incident, Plaintiff, who is of Palestinian descent, was an employee of RSA Security, Inc., a Bedford, MA, company. As part of a contract between plaintiff's employer and UPS, plaintiff was sent to work at the Ramapo Ridge facility of UPS in Mahwah, NJ. He began his work as a Data Security consultant on September 10, 2001. The following day, in the wake of the attacks on the World Trade Center and Pentagon, Atari became concerned he might not be safe at work because of derogatory comments about Arabs made in his presence by people watching the events unfold on a television set in the company's cafeteria area. He alleges that he was assured by his UPS supervisor, James Flynn, that he would be safe, although UPS claims that Flynn gave Atari the option of leaving for the day.

Later that day, Atari was attacked in a UPS bathroom by an unknown assailant who has yet to be identified. The attacker cursed at Atari, referred to him as a "terrorist," and slammed his head against a wall. Whether Atari lost consciousness is a matter of dispute between the parties, but in any case, Atari was discovered in the bathroom by co-workers some time later. According to defendant, Atari was attended to by three members of the UPS "Response Team" and three members of the Mahwah police department who also responded to the scene. Mr. Atari was taken by ambulance to the Good Samaritan Hospital in Suffern, NY, where he was treated by a Dr. Silverberg. He then returned to the Ramapo Ridge facility with his UPS project leader Robert Wayne Plummer to gather his belongings.

After Atari returned to Massachusetts, members of the UPS Human Resources and Security departments conducted an investigation into the incident, including interviews with (according to defendant) twenty UPS employees. The Mahwah Police Department conducted a similar investigation. UPS was also approached by members of the New Jersey State Police, the Bergen County Prosecutor's Office, and the FBI. The identity of the alleged assailant was never ascertained. Atari, meanwhile, sought additional treatment from the Massachusetts General Hospital Pain Clinic and the Spaulding Rehabilitation Clinic, which is located in Boston. His motion opposing transfer alleges that he has suffered a traumatic brain injury "that has rendered him totally disabled from work." Atari seeks approximately $270,000 in damages.

### III. Matters Potentially Relevant to a Decision on Transfer

#### A.

UPS moves for transfer to the United States District Court for the District of New Jersey under 28 U.S.C. s. 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The decision is constrained by the general venue provisions of 28 U.S.C. § 1391:

A civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if

all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ..., or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced.... 28 U.S.C. § 1391(a).

"[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

■■■ If these statutory hurdles are surmounted, the decision to transfer a case to a different forum under 1404(a) is a matter within the discretion of the court. *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir.1977). A presumption in favor of the plaintiff's choice of forum exists, and the burden of proving that transfer is warranted is on the defendant. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981) (declaring that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum"); *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D.Mass.1991).

The private interests identified by *Piper* include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; and (6) any practical problems associated with trying the case most expeditiously and inexpensively. *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. 252 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

The public interests include: (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (2) the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; (3) the local interest in having localized controversies decided at home; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) administrative difficulties flowing from court congestion. *Id.*

No definitive guidelines for weighing all these factors have been developed, but the convenience of the witnesses "is '[p]robably the most important factor, and the factor most frequently mentioned.'" *See Princess House*, 136 F.R.D. at 18 (quoting *Brant Point v. Poetzsch*, 671 F.Supp. 2, 5 (D.Mass.1987)). "The court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify. A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Id.* (citing *Brant Point* at 3–4).

## B.

Transfer of this case, which is founded on diversity of citizenship, would violate none of the relevant statutory proscriptions. Atari could have brought the case in the District of New Jersey, where the alleged incident occurred, and UPS is subject to personal jurisdiction in that district based on the presence of its Mahwah facility and the business it conducts in the state, among other reasons. Indeed, Atari does not dispute defendant's motion on these grounds. Nor do the parties disagree on any significant aspect of the guiding law or precedent. Rather, the dispute

essentially boils down to consideration of the other factors mentioned in 1404(a)—namely, the "convenience of parties and witnesses" and "the interest of justice"—and the weighing of the private and public interest factors that the courts have developed to guide such decisions.

Defendant contends that because the events at issue took place in Mahwah and the surrounding area, "virtually all of the witnesses, except Mr. Atari, and all of the documents relevant to the case" are located there. Holding the trial in Massachusetts, UPS argues, would be inconvenient for them and all witnesses involved, increase the costs of securing live testimony at trial, and disrupt "both UPS' business and the business of the involved law enforcement agencies." Furthermore, few of these witnesses, UPS claims, would be subject to process in Massachusetts, and thus would be available only through deposition testimony.

In support of these claims, UPS offers a lengthy list of the witnesses expected to testify, all of whom allegedly live in the general vicinity of the Mahwah facility: Kenneth Beland, who found Atari in the bathroom after the assault; the three members of the UPS "Response Team" who treated Atari at the scene; two other UPS employees at the scene; Robert Wayne Plumber, Atari's UPS project leader who accompanied him back to the facility to gather his belongings; James Flynn, the UPS supervisor who allegedly told Flynn he would be safe that afternoon; Mary Ann Ostroman and Martin Dillon, the two UPS employees who conducted the internal investigation; Natalie Raphael, UPS Security Manager; the three members of the Mahwah Police Department who responded to the scene; the members of the Department who conducted the later investigation; the three other law enforcement officers who investigated the incident on behalf of the state police, county prosecutor's office, and FBI; and the ambulance and medical staff who treated Atari at the Good Samaritan Hospital.

Defendant also cites *Brant Point Corp.*, 671 F.Supp. at 5, in support of its claim that when "none of the operative facts in a case have any connection with the plaintiff's choice of forum, which is the case here, the plaintiff's choice of forum is not determinative." A public interest exists, UPS says, in "having localized controversies decided at home by a local jury." Also, since New Jersey law will likely decide the case, it should be held in a forum "that is at home with the state law that must govern the case." See *Piper Aircraft Co.*, 454 U.S. at 241 n. 6, 102 S.Ct. 252.

Atari's motion in opposition presents almost identical convenience arguments on behalf of the medical witnesses he intends to call to testify, all of whom reside in the Boston area: Andrea Reilly, M.D., Atari's primary physician at Mass General since the accident; Danielle Wheeler, Amy Queander–DeMatteo, Lisa Miller, and David Biondi, the physical and occupational therapists who have treated Atari at the Spaulding Rehabilitation Hospital; and Dr. Jatinder Gil of the Mass General Pain Clinic. If the trial is held in New Jersey, Atari argues, none of these witnesses will be subject to service of process in the state or be able to testify in person because Atari, who has not worked since the September 11 incident, will be unable to reimburse them adequately for their travel or time off from work. Only deposition or video testimony will be available.

Atari also argues strenuously that the plaintiff's choice of forum should not be disturbed unless the defense has established, by clear and convincing evidence, the necessity of a transfer. The defendants' witnesses, says Atari, were merely

involved in the search to identify his assailant, and are thus "peripheral" and "irrelevant" to the case at hand. The court must consider not just "the pure number of witnesses," but also (per *McEvily v. Sunbeam–Oster Co., Inc.*, 878 F.Supp. 337, 345 (D.R.I.1994)) "the nature and quality in relation to the issues of the case." Only Atari and Flynn were present for the conversation in which Flynn allegedly informed Atari that he would be safe at UPS, and the two are therefore the "most important witnesses" for determining the fundamental issue of the case: the reasonableness of Flynn's assurances and UPS' security measures. Atari argues that, since the convenience issue comes down to a "tie" between the plaintiff and Flynn, "the shifting of inconvenience from Defendant to Plaintiff is no reason to transfer the venue." *See Princess House,* 136 F.R.D. at 16.

Atari forwards several other "private interest" arguments in opposition to defendant's motion: that New Jersey is not the actual home state of UPS (a New York corporation) and thus home to neither party; that travel to Massachusetts would not be inconvenient for UPS employees, as claimed by UPS, because they would be traveling in support of their employer; and that the documents relevant to the case, Atari's medical records, are all in Massachusetts (with the exception of the police report filed after the incident). On the "public interest" side, Atari claims that Massachusetts has a "strong local interest" in having a Massachusetts jury deciding the case of a Massachusetts citizen injured while working for a Massachusetts company.

## C.

■ Taking each side's arguments into account, and carefully weighing the factors established by the relevant precedents, I rule that defendant's motion to transfer must be GRANTED.

Atari's claim that all of defendant's witnesses, with the exception of Flynn, are merely "peripheral" does not stand up under scrutiny. The heart of Atari's negligent security claim is that UPS failed in its duty to provide a reasonably safe workplace for its employees on the day in question. Contrary to Atari's assertions, the relevant evidence thus will necessarily encompass those witnesses who will help a judge or jury determine not just what Flynn told Atari, but the reasonableness of UPS' security efforts as a whole given the volatile environment that day. The testimony of the investigating officers and UPS personnel will be crucial to such a determination, and extend far beyond the issue of the identification of Atari's assailant.

Similarly, the testimony of the UPS Response Team who first attended to Atari after the incident, as well as the ambulance and medical personnel who treated him immediately thereafter, will be of crucial importance to the issue of damages. This is not to discount the importance of Atari's medical witnesses; it is certainly credible that Atari's injuries did not become manifest until some time after he returned to Massachusetts, and that Atari's witnesses will provide important testimony on the matter. Defendant's suggestion that "virtually all" of the witnesses are located in New Jersey is therefore somewhat misleading. It is equally misleading, however, for Atari to suggest that *only his* Massachusetts medical providers are relevant witnesses regarding this question. Surely the testimony of those who treated Atari in the moments after the incident, along with their written records, will be of probative value for the judge or jury, whether or not that testimony squares with the evidence offered by Atari's witnesses.

The court cannot accept Atari's claim that the question of convenience boils down to a dispute between his convenience and Flynn's. Defendants have sustained their burden of demonstrating with particularity who they expect will testify as witnesses and why those witnesses are relevant. Although the court is not convinced that everyone listed will need to testify, or that some of the witnesses will not be eliminated to save time and avoid mere duplication, the list is significant, lengthy, and comprises individuals who will testify to all aspects of the case and what happened at the UPS facility on September 11. (More likely than not, Mr. Atari will decide that he himself wishes to call some of these New Jersey witnesses as he develops his case; his argument that the court must consider the "nature and quality" of the witnesses thus only further supports my determination to grant the motion and transfer the case to New Jersey.)

By comparison, Mr. Atari's potential witness list contains only the six medical professionals who have provided his treatment in Massachusetts. As stated above, beyond doubt these witnesses will provide important testimony on the issue of damages. Selecting the Massachusetts forum based on this factor alone, however, would inconvenience the much larger number of witnesses who would testify both on the question of UPS' liability and the issue of Atari's post-assault demeanor and treatment. If, as Atari points out in his affidavit, his medical witnesses will not be able to appear in person, Mr. Atari will nonetheless retain the option of presenting this testimony via traditional deposition or by videotape.

A decision either way necessarily will result in one side being inconvenienced with travel to an out-of-state forum and the difficulty of securing in-person eyewitness testimony in that forum. Although I am mindful of the caution against considering merely "the number of witnesses located in or near the respective forums," *McEvily v. Sunbeam–Oster Co., Inc.,* 878 F.Supp. at 345, I find that the convenience factor nonetheless tilts convincingly in favor of UPS and transferring the case.

The fact that the incident that lies at the heart of Atari's civil action occurred in New Jersey lends additional support to this decision. *See Morales v. Navieras de Puerto Rico,* 713 F.Supp. 711 (S.D.N.Y. 1989) (transferring case of seaman assaulted on a vessel berthed in Puerto Rico from New York to Puerto Rico because the case had "no real nexus to New York," despite fact that the assailant, several key witnesses, and at least one defendant resided in New York area). Given the reprehensible nature of the alleged incident, I find that New Jersey has a clear interest in trying and resolving the case in a local forum, and fairness suggests that jury duty should fall on New Jersey citizens. *See McEvily,* 878 F.Supp. at 348. And although Massachusetts undoubtedly wishes to see its citizen obtain justice, the record before me does not support the suggestion that Atari's case will be prejudiced by an action in an out-of-state court.

Defendant's brief also presents a convincing argument that the case should be transferred to the forum whose law will govern the case—a suggestion not opposed by Atari, and one that I have no reason to doubt. *See, e.g., Cohen v. McDonnell Douglas Corporation,* 389 Mass. 327, 333, 450 N.E.2d 581, 585 (1983) ("The law of Massachusetts is that ordinarily 'the substantive law governing an action of tort for physical injury is that of the place where the injury occurred' ") (quoting *Brogie v. Vogel,* 348 Mass. 619, 621, 205 N.E.2d 234 (1965)). At the hearing on this matter, however, neither side pressed the issue or suggested that any conflict of laws exists

that should impact the decision. To the degree that this factor tilts the balance in either direction, it tilts it, like the previously discussed factors, toward the defendant.

## ORDER

For the foregoing reasons, it is OR-DERED:

(1) Defendant's Motion to Transfer the case to the United States District Court for the District of New Jersey is GRANT-ED.