**GEMINI INVESTORS INC., Plaintiff**

v.

**AMERIPARK, INC., Defendant.**

**Civil Action No. 07–CV–11624–RCL.**

United States District Court,
D. Massachusetts.

Feb. 25, 2008.

outcome might be different if Rollins was represented by counsel.

Victor H. Polk, Jr., Greenberg Traurig LLP, Boston, MA, for Plaintiff.

Douglas K. Mansfield, Donna Brewer MacKenna, Casner & Edwards, LLP, Boston, MA, Richard L. Robbins, Sutherland, Asbil & Brennan LLP, Atlanta, GA, for Defendant.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR MOTION TO TRANSFER VENUE *(Docket # 6)*

ALEXANDER, United States
Magistrate Judge.

Plaintiff, Gemini Investors Inc. ("Gemini"), commenced a breach of contract suit against Ameripark, Inc. ("Ameripark") in the Superior Court for Norfolk County, Massachusetts on July 25, 2007. Ameripark subsequently removed this suit to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § § 1332, 1441, and 1446. Now, Ameripark has filed a motion to dismiss Gemini's Complaint for lack of personal jurisdiction, or, in the alternative, to transfer this case to the United States District Court for the Northern District of Georgia. For the reasons given below, this Court RECOMMENDS that Ameripark's motions be DENIED.

### Factual Background

Gemini is a venture capital firm incorporated under the laws of Delaware, with its principle place of business in Massachusetts. Ameripark is a parking management services company incorporated under the laws of Georgia, with its principle place of business in Georgia. Their relationship stems from an Ameripark business proposal to Mile Hi, a valet services company headquartered in Colorado, dated on or about January 30, 2007. This proposal expressed Ameripark's intention to acquire Mile Hi's business operations. In order to finance this acquisition, Ameripark intended to use a mixture of existing assets and equity and new debt and equity.

To facilitate its search for new debt and equity, Ameripark hired VRA Partners, LLC ("VRA"). Mark Loeffler, Managing Director of VRA and based out of Atlanta, Georgia, represented Ameripark in negotiations with Gemini. Loeffler had numerous contacts with Gemini officials, at all times while he was stationed in Georgia. The level of his involvement is as follows: On or before January 16, 2007 he had a telephone conversation with James Rich ("Rich"), Managing Director of Gemini, who was located in Massachusetts. The conversation concerned Ameripark's interest in purchasing an entity unrelated to Mile Hi. Then, on January 18, 2007, Loeffler initiated discussions by telephone with Rich about Gemini financing Ameripark's acquisition of Mile Hi. On January 29, 2007, Loeffler sent an email to Rich in Massachusetts asking Rich to call him for an update. Subsequently, Loeffler set up a meeting at his Atlanta, Georgia office for February 6, 2007; Loeffler, Rich, Ameripark's CEO Roger Patterson, and Ameripark's COO Rob Lawyer attended this meeting. Then, on March 14, 2007, Loeffler called Rich to discuss various verbal proposals and the particular one in which Ameripark was comfortable.

Representatives from Gemini and Ameripark had other interactions in furtherance of their goal in reaching an agreement. For example, Ameripark permitted Gemini

access to an electronic virtual data room, from which Gemini accessed, printed, and analyzed organizational items, contracts, organizational charts, audited financials, and other financial information. VRA also sent additional information, in paper form, to Gemini in Massachusetts. Finally, in late-February 2007, Ron Shah, a Vice President of VRA, sent adjusted EBIT-DA [1] calculations to Gemini regarding Mile Hi and Ameripark. He also sent numerous other documents to Gemini personnel in Massachusetts: (1) Letter of Intent between Ameripark and Mile Hi, (2) Ameripark's 2006 monthly financial statements, (3) Ameripark revenue and profit report (by location), and (4) the draft offering memorandum for the Ameripark–Mile Hi deal.

There were substantial connections amongst the three parties at the contracting stage. On March 9, 2007, VRA sent a counter-proposal to Gemini in response to Gemini's first written offer sent two days earlier. On March 10 and 11, 2007, VRA organized and engaged in conference calls with Gemini personnel in Massachusetts. On March 13, 2007, Mr. Patterson and Mr. Lawyer traveled from Georgia to Massachusetts to meet with high-ranking Gemini officials and discuss two proposals over dinner at the Capital Grill in Boston.

The course of dealings amongst Gemini, VRA, and Ameripark culminated in the execution of "the Outline," a document purporting to contemplate the possibility of Gemini financing part of Ameripark's acquisition of Mile Hi. This Outline included an "exclusivity" clause, the heart of the Gemini's Complaint, in which Ameripark agreed neither to discuss the financing opportunity nor reach an agreement with any other person or entity until April 16, 2007. It was first signed in Georgia, then sent to Massachusetts for Rich to execute. Furthermore, Gemini personnel performed a significant amount of "diligence" with respect to the Outline. Gemini's Complaint is founded on its declaration that Ameripark breached the "exclusivity" provision in the Outline.

The parties, naturally, disagree as to whether this Court has personal jurisdiction over Ameripark. Gemini maintains that this Court has personal jurisdiction over Ameripark based on the quantity and quality of contacts between Ameripark and Massachusetts. Ameripark asseverates that this Court does not have personal jurisdiction over it because its conduct in Massachusetts was isolated, and thus does not comport with the requirements of the Massachusetts long-arm statute.

On the issue of venue transfer, Gemini states that venue should remain in the Commonwealth because of the strong presumption in favor of a plaintiff's choice of forum and Ameripark's failure to overcome this strong presumption. Ameripark counters by arguing that, even if this Court were to find personal jurisdiction, it should transfer venue to the Northern District of Georgia because this dispute has a far greater nexus with Georgia than Massachusetts, thus transfer would be in the interest of justice.

## ANALYSIS

### I. PERSONAL JURISDICTION

#### A. Standard of Review

"On a motion to dismiss for want of in personam jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists. In conducting the requisite analysis under the prima

---

1. EBITDA = Earnings Before Interest, Taxes, Depreciation, and Amortization. This is an approximate measure of a company's operating cash flow based on a date from the company's income statement. *See* http://www.investorwords.com/1632/EBITDA.html (viewed on 01/28/08).

facie standard, [this Court must] take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim. We then add to the mix facts put forward by the defendants to the extent that they are not uncontradicted ... despite the liberality of this approach, the law does not require [this Court] to credit conclusory allegations or draw farfetched inferences." *Mass. Sch. of Law v. ABA*, 142 F.3d 26, 34 (1st Cir.1998) (internal quotation marks and citations omitted).

### B. Long–Arm/Due Process Analysis

When any Massachusetts Federal District Court is faced with a personal jurisdiction issue involving a nonresident defendant, two questions are to be asked: "(1) is the assertion of jurisdiction authorized by the Massachusetts long arm statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?" *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 931 (1st Cir.1985) (quoting *Good Hope Industries v. Ryder Scott Co.*, 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979)). But, it is unnecessary for this Court to conduct a lengthy long-arm analysis, so that we may go directly to the constitutional analysis, "because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." (internal quotation omitted) *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir.2002) (quoting *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361

Mass. 441, 443, 280 N.E.2d 423 (1972)); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir.1995) ("when a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards").

As a starting point, it is axiomatic that federal courts may exercise general or specific personal jurisdiction. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.*, 394 F.Supp.2d 299, 307 (D.Mass.2005) (internal quotation marks and citations omitted). This case presents an issue of specific personal jurisdiction, as neither party avers Ameripark engaged in "continuous and systematic activity" in Massachusetts other than its actions viz-a-vis Gemini leading to this litigation.[2]

The First Circuit created a three-part test for cases when a defendant contests specific personal jurisdiction, to determine whether sufficient contacts exist to permit a District Court to exercise jurisdiction over an objecting nonresident defendant: "First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must

---

2. Yet, Gemini mentions that Ameripark has contacts with Massachusetts other than the Mile–Hi acquisition financing proposal. These contacts, Gemini avers, produced nearly $5,000,000 in revenues. *See* Gemini Memorandum 10–11. Gemini does not specifically argue that this forum activity was "continuous and systematic" and it is unnecessary to address for purposes of this memorandum.

represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir.1992). This Court will address each prong separately.

*Prong 1: "Arise out of, or relate to"*

This "relatedness" inquiry focuses a court's attention "on the nexus between a plaintiff's claim and the defendant's contacts with the forum." *Sawtelle*, 70 F.3d at 1389. These contacts may be minimal. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (holding that the Due Process Clause of the Fourteenth Amendment permits a State to exercise personal jurisdiction over a non-resident only when the defendant has sufficient minimum contacts with the forum). Since the case at bar involves a contract and its alleged breach, this Court "must ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." *Wolverine*, 394 F.Supp.2d at 308 (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir.1999)). It is "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Viewed through this prism, it is perspicuous that Ameripark and VRA's contacts with Massachusetts, consisting of email, telephone calls, faxes, and personal appearances, were instrumental in the formation of the Outline.[3] Ameripark's correspondences and interactions with Gemini personnel in Massachusetts, on a regular and formal basis indicate a regular course of dealing consistent with purposefully establishing contacts with Massachusetts. *Compare Wolverine*, 394 F.Supp.2d at 309 (contacts were not informal, and established a relationship and course of dealing between companies that subsequently contracted). *But see Sawtelle*, 70 F.3d at 1389–91 (transmission of information into forum does not automatically compel a finding of personal jurisdiction). Ameripark representatives traveled to Massachusetts, from Georgia, to discuss the proposal. *See* Gemini Memorandum 4. *Compare Wolverine*, 394 F.Supp.2d at 308 (defendant's president traveled to Massachusetts). Most notably, the agreement was executed in Massachusetts. *See* Gemini Memorandum at 5; *see also Carlson Corp. v. Univ. of Vt.*, 380 Mass. 102, 105, 402 N.E.2d 483 (1980) (although the services were to be performed outside of the Commonwealth, the Supreme Judicial Court of Massachusetts held the signing of a contract in Massachusetts constitutes the transaction of business in Massachusetts); *cf. Hahn v. Vt. Law Sch.*, 698 F.2d 48, 50–52 (1st Cir.1983) (defendant's communications with the plaintiff in Massachusetts amounted to the transaction of business in Massachusetts, regardless of whether the contract between the parties had actually been executed in the Commonwealth.). Finally, the parties negotiated for a couple of months and the deal was

---

**3.** It is unknown at this time whether and to what extent the contacts were instrumental in the breach.

worth millions of dollars. *See Carlson Corp.*, 380 Mass. at 107, 402 N.E.2d 483 (A contract has a substantial connection with a State based on the amount of time and money involved). Because of the value of the contract, Ameripark's CEO's trip to Massachusetts, and the quantity and quality of the communications transmitted into Massachusetts, *see Phillips Exeter Academy*, 196 F.3d at 290 ("the content of the parties' interactions [create] constitutionally significant contacts") this Court can reasonably conclude that Gemini's claim arose out of Ameripark's "more than minimal" contacts with this forum.

*Prong 2: "Purposeful Availment"*

■ "[W]here a party, through its interstate contractual obligations, reaches out beyond one state and creates continuing relationships and obligations with citizens of another state, it is subject to regulation and sanctions in the other State for the consequences of its activities." *Wolverine*, 394 F.Supp.2d at 309 (quoting *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174) (internal quotation marks omitted). The concept of purposeful availment is a function of voluntariness and forseeability. *Ticketmaster–New York v. Alioto*, 26 F.3d 201, 207 (1st Cir.1994). The contacts between Ameripark and Gemini, culminating in the formation of a contract, indicate Ameripark's willingness to engage in a continuing business relationship with Gemini. Ameripark, through its agent, Loeffler, deliberately reached into Massachusetts to do business with a Massachusetts corporation. *See Phillips Exeter Acad.*, 196 F.3d at 292 (evidence of voluntariness may be found where a defendant reaches into the forum to create a relationship with the plaintiff); *see also Daynard*, 290 F.3d at 55 ("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal"). Loeffler's communications with Rich in January,

2007 regarding the potential financing of Mile–Hi, consisting primarily of the telephone call to Rich on January 18 and an e-mail on January 29, were deliberate acts aimed at soliciting business from a Massachusetts corporation.

Furthermore, Ameripark could foresee that its "conduct and connection with [Massachusetts] are such that [it] should reasonably anticipate being haled into court [here]." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Ameripark "established a continuing obligation between itself and [Massachusetts]" *Sawtelle*, 70 F.3d at 1393, when it entered into a contract with a Massachusetts corporation that was executed in Massachusetts after months of negotiations with Massachusetts residents.

*Prong 3—Gestalt Factors*

■ This prong is commonly known as the "reasonableness" test, and requires this Court to focus on five factors: "(1) the defendant's burden in appearing in court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all interested states in promoting substantive social policies." *Hasbro, Inc. v. Clue Computing Inc.*, 994 F.Supp. 34, 45 (D.Mass. 1997) (citing *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174).

*Factor 1: The Defendant's Burden*

If we take "specific facts affirmatively alleged by the plaintiff as true" *Massachusetts School of Law v. ABA*, 142 F.3d at 34, Ameripark has pervasive business contacts with Massachusetts entities. *See* Gemini Memorandum 11 ("Ameripark's 2007 revenue from all of these [Massachusetts] contracts is expected to be $4,769,946").

Moreover, the First Circuit has said "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir.1994). Ameripark does not state how or why it would face a special or unusual burden by having to adjudicate this matter in a Massachusetts courtroom. Lastly, there is no indication Gemini has chosen to adjudicate this matter in Massachusetts in order to harass Ameripark, a practice looked upon disfavorably by the United States Supreme Court. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (a plaintiff may not harass or vex a defendant through its choice of forum). For these reasons, this factor weighs in Gemini's favor.

*Factor 2: Massachusetts' Interest*

All states have an interest in "provid[ing] a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." *Sawtelle*, 70 F.3d at 1395. The contract at the heart of this case was executed in Massachusetts, and all of Ameripark's activities in reaching the execution stage, including its CEO's physical presence in Massachusetts, were directed towards the Commonwealth. This factor, too, weighs in Gemini's favor.

*Factor 3: Plaintiff's Convenience*

Gemini's principal place of business is in Massachusetts. Out of all fifty states, Massachusetts, undoubtedly, would be the most convenient forum for it to seek redress for the alleged breach of a contract executed in this State. "Its primary counsel is situated here, as are its executives who negotiated" [the Outline]. *Digital Equip. Corp. v. AltaVista Tech.*, 960 F.Supp. 456, 471 (D.Mass.1997).

*Factor 4: The Administration of Justice*

"Usually this factor is a wash." *Nowak v. Tak How Invs.*, 94 F.3d 708, 718 (1st Cir.1996). There is no indication that Georgia "cares" more about this case than Massachusetts. Justice can be meted out as swiftly and effectively in a Massachusetts courtroom as it can be in a Georgia courtroom. This factor does not weigh in either party's favor.

*Factor 5: Social Policies*

This is not a like an Internet case where there are "potential costs of defending against litigation in each and every state." *Digital Equip. Corp.*, 960 F.Supp. at 471. This is a standard breach of contract case between a Georgia corporation and a Massachusetts corporation. Ameripark does not put forward any social policy that prevents a Massachusetts judge, in a Massachusetts court, to preside over this case. This factor, too, does not weigh in either party's favor.

Ameripark's contacts with Massachusetts are of a sufficient minimal quantum that it will not "offend traditional notions of fair play and substantial justice," *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154, (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)), to require Ameripark to defend this lawsuit in the United District Court for the District of Massachusetts. Gemini's claim arises out of and relates to Ameripark's conduct resulting in the formulation of the Outline, Ameripark purposefully availed itself of the Commonwealth jurisdiction by voluntarily seeking business from a Commonwealth corporation, and the Gestalt factors weigh heavily in Gemini's favor to the extent that this Court's exercise of jurisdiction over Ameripark is reasonable.

## II.  TRANSFER OF VENUE

Since this Court recommends denying Ameripark's motion to dismiss for lack of personal jurisdiction, Ameripark requests, in the alternative, that this Court transfer the case to the United States Court for the Northern District of Georgia.

28 U.S.C. § 1404(a) is the applicable statute when a transfer-of-venue issue arises. It reads "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (superseded by statute on other grounds as stated in *Ross v. Colorado Outward Bound School, Inc.*, 822 F.2d 1524 (10th Cir.1987)).

■ In making its decision to transfer, this Court "must balance several factors, including the convenience of the parties and witnesses, the availability of documents and the interests of justice." *Workgroup Tech. Corp. v. MGM Grand Hotel*, 246 F.Supp.2d 102, 116 (D.Mass.2003). Another factor to consider is the plaintiff's choice of forum, *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D.Mass.1991), which is to be accorded "great weight." *S–G Secur. Inc., v. Fuqua Inv. Co.*, 466 F.Supp. 1114, 1122 (D.Mass.1978). In other words, there is a strong presumption in favor of a plaintiff's choice of forum. *Home Prods. Int'l—N. Am. v. PeopleSoft USA, Inc.*, 201 F.R.D. 42, 48 (D.Mass. 2001) Crucially, Ameripark bears the burden of showing that transfer is warranted under the particular facts of the case. *Atari v. UPS*, 211 F.Supp.2d 360, 362 (D.Mass.2002).

### A. Convenience of the Witnesses and Parties

■ Judges in this District agree that convenience of the witnesses is an extremely important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue.

*See Brant Point Corp. v. Poetzsch*, 671 F.Supp. 2, 3 (D.Mass.1987) (Wolf, C.D.J.) (citing 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE 2d § 3851 at 415 (1986) ("convenience of the witnesses is probably the most important factor, and the factor most frequently mentioned")); *Princess House Inc.*, 136 F.R.D. at 18 (Bowler, M.J.) (same); *Home Prods. Int'l—N. Am.*, 201 F.R.D. at 49 (Keeton, D.J.) ("the convenience of witnesses is an extremely important factor"). "Th[is] Court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Princess House*, 136 F.R.D. at 18. "A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Id.*

In its Memorandum, Ameripark only specifies two witnesses which it expects to testify in this case: Mr. Patterson and Mr. Loeffler. To date, Ameripark has not provided this Court with a general statement as to their testimony. This is woefully inadequate in persuading this Court that the Northern District of Georgia is a more convenient forum, considering that Gemini intends to call five Massachusetts residents who were heavily involved in negotiations leading to formulation of the Outline. Although this Court should not consider the "pure number" of witnesses but instead the "nature and quality in relation to the issues in the case," *Atari*, 211 F.Supp.2d at 364, the fact that *all* witnesses are crucial to the outcome does not weigh this factor in Ameripark's favor. Thus, "in effect, transfer would merely shift the inconvenience from one party to the other." *Princess House*, 136 F.R.D. at 18. Judges in this District have repeatedly expressed disfavor in such "in-

convenience-shifting." *See Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. 165, 169 (D.Mass.1982) (Zobel, D.J.); *Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259, 1261 (D.Mass.1988) (Skinner, D.J.); *Kleinerman v. Luxtron Corp.*, 107 F.Supp.2d 122, 126 (D.Mass.2000) (Gorton, D.J.). Accordingly, Ameripark has failed to elicit a sufficient quantum of inconvenience to its witnesses necessary to overcome the "great weight" accorded to Gemini's choice of forum.

### B. Availability of Documents and Interests of Justice

Ameripark avers the documents regarding the acquisition of Mile Hi and the formation of the Outline are in Georgia. This factor is insignificant when the documents are mobile. *Princess House, Inc.*, 136 F.R.D. at 21. This is because "most records and documents now can be transported easily or exist in miniaturized or electronic form." *Boateng v. Gen. Dynamics Corp.*, 460 F.Supp.2d 270, 276 (D.Mass.2006) (quoting 15 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3853). Ameripark does not explain why it cannot transport the documents easily from Georgia to Massachusetts.

Ameripark's interest of justice argument is similarly unpersuasive. It makes the breathtaking statement "the general rule is that complaints are filed in the venue where the defendant resides," without, of course, providing a citation for this astounding proposition. *See* Ameripark Memorandum 11. This can hardly be seen as a reason warranting transfer.

Ameripark has failed to meet its burden of showing to this Court that the Northern District of Georgia is a more appropriate venue for this litigation. Transferring this litigation to Georgia would only serve to shift the inconvenience of the witnesses from the defendant to the plaintiff, a prac-

tice which is universally disfavored. Also, Ameripark has not shown that the documents cannot be easily transported to Massachusetts, nor has it shown that it is in the interests of justice to litigate this suit in Georgia. Therefore, it is appropriate to honor Gemini's choice of forum.

### III. CONCLUSION

Ameripark has sufficient contacts with Massachusetts to such an extent that this Court's exercise of personal jurisdiction over it is reasonable. Also, Ameripark failed to overcome the presumption in favor of Gemini's choice of forum. Accordingly, this Court RECOMMENDS that Ameripark's Motion to Dismiss Plaintiff's Complaint or Motion to Transfer Venue be DENIED.

SO ORDERED.